*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re E. SANCHEZ, Minor.

UNPUBLISHED
February 12, 2019

Nos. 341113; 342062
Ingham Circuit Court
Family Division
LC No. 15-000558-NA

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother in Docket No. 341113 and respondent-father in Docket No. 342062 each appeal as of right the trial court's order terminating their parental rights to their son, ES, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (g) (failure to provide proper care or custody). On appeal, both parents argue that the trial court erred by finding statutory grounds for termination. We conclude that the trial court did not clearly err by finding that statutory bases for termination were proven by clear and convincing evidence. Respondent-mother also argues that the trial court erred by finding that termination of her parental rights was in ES's best interests. Because the trial court did not explicitly address ES's placement with a relative as required by *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), and *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012), we vacate the trial court's best-interests ruling in Docket No. 341113 and remand for reconsideration of the issue. We affirm in Docket No. 342062.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On April 29, 2015, the Department of Health and Human Services (DHHS) filed a petition seeking ES's removal from his parents' care and termination of respondent-mother's parental rights following a drug raid at respondent-father's home. The petition alleged that respondent-father was arrested for selling heroin out of the home, that respondent-mother was

---

[1] See *In re Sanchez Minor*, unpublished order of the Court of Appeals, entered January 31, 2018 (Docket Nos. 341113; 342062).

involved and assisted in the sale of drugs, and that ES was present during the sale of drugs. The petition also stated that respondent-father picked ES up after handling heroin with his bare hands and that needles were found in the home, within reach of ES. The petition further stated that respondent-mother's parental rights had been terminated with respect to another child and that ES had been temporarily removed from her care at birth because he tested positive for opiates, benzodiazepines, and methadone.

Both parents entered pleas of admission, allowing the trial court to take jurisdiction over ES. ES was placed with his maternal grandmother while DHHS monitored the pending drug charges. Respondent-father repeatedly requested that ES's placement be changed to his paternal grandmother's home, but the foster-care worker maintained that ES's placement was appropriate and the child's lawyer-guardian ad litem (L-GAL) advocated against moving him.

Shortly thereafter, the trial court entered a dispositional order identifying the terms and conditions of the parents' service plans. Among the requirements contained in the dispositional order were that both parents obtain lawful employment and submit verification to the foster-care worker; seek, obtain, and complete substance-abuse treatment; submit to testing for alcohol or controlled substances whenever deemed necessary; attend Alcoholics Anonymous (AA), Cocaine Anonymous (CA), or Narcotics Anonymous (NA) meetings at least once weekly and submit verification; complete psychological examinations as directed; participate and benefit from individual or family counseling sessions as directed; attend and participate in all parenting classes as directed; and establish and maintain a home suitable for the child and not allow any other adults to live in the home without approval of the foster-care worker. Further, both parents were prohibited from possessing or using alcoholic beverages, intoxicants, illegal drugs, or other illegal substances, including prescription medication that had not been prescribed to the parents by a licensed health practitioner authorized to prescribe medications.

At first, both parents appeared to be participating in services and both successfully completed parenting classes. The assigned foster-care workers reported that visitations were successful and that both parents showed good parenting skills. However, respondent-mother continued to struggle with substance abuse, and it was reported that respondent-father continued to deal drugs. Subsequently, respondent-father pleaded guilty to some of the drug-related charges brought against him and was sentenced to a minimum of 51 months' imprisonment. After three show-cause hearings were held as a result of respondent-mother's continued failure to abide by the DHHS case-service plan, DHHS petitioned for termination of both parents' parental rights. Following a termination hearing, the trial court indicated that although petitioner had established the statutory bases for termination, the best-interests requirement had not been met. The trial court warned the parents that the court would continue to monitor the case.

Soon thereafter, the foster-care worker received reports that some of respondent-mother's behaviors were consistent with substance abuse and that she frequently missed drug screens. On two occasions, respondent-mother was suspected of being "high" during parenting time. Additionally, she began residing with an individual who refused to participate in background checks or case planning. She also failed to provide proof of a renewed marijuana card but continued to test positive for marijuana, and she revoked her release of information at the methadone clinic she was attending. Further, although respondent-father claimed that he would

be attending "boot camp" to accelerate his release from prison, he did not keep caseworkers adequately informed about his progress with obtaining an earlier release.

In February 2017, DHHS filed a supplemental petition requesting termination of both parents' parental rights. At the termination hearing, the foster-care worker reported that respondent-mother continued to miss required drugs screens, continued to test positive for drugs for which she did not provide a valid prescription, and maintained employment that provided inconsistent wages. There were also concerns that respondent-mother was "[i]nconsistent" and "manipulative" in her approach to the termination case and would only appear to show consistency in participation when a hearing was scheduled. Additionally, although respondent-mother had obtained housing, the foster-care worker could not confirm that the home was appropriate for ES because of reports that there were people coming and going without undergoing the required background and central-registry checks.

Respondent-father continued to be unresponsive to caseworkers' letters, and uncooperative with providing the necessary authorizations for foster-care workers to discuss services available to him while incarcerated. Despite his continued assertions that he would accelerate his release from prison by attending "boot camp," his caseworker was informed that he was not eligible for "boot camp." Additionally, when provided with a set and consistent schedule in which to complete his telephone calls with ES, respondent-father was resistant and ignored the times communicated to him. Respondent-father was perceived as being resistant to services.

The trial court terminated both parents' parental rights after finding by clear and convincing evidence that the parents failed to correct the conditions that led to the adjudication. Finding that it was in ES's best interests to have a life with stability and permanence, the trial court terminated both parents' parental rights, citing MCL 712A.19b(3)(c)(*i*) and (g).

## II. RESPONDENT-MOTHER'S ISSUES ON APPEAL

### A. STATUTORY GROUNDS

Respondent-mother argues that the trial court clearly erred when it found that DHHS established grounds for termination of her parental rights under MCL 712A.19b(3)(c)(*i*) and (g). Respondent-mother contends that she had employment and housing, her parenting-time visits were going well, and her parenting skills were exceptional throughout the pendency of the case. She contends that the only issue remaining was her substance abuse, and she had been making progress in solving this issue.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's finding that a ground for termination has been established is reviewed for clear error. *Id*.; MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court terminated respondent-mother's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (g), which, at the time of these proceedings,[2] provided:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*).

ES came within the court's jurisdiction after the court accepted both parents' pleas in June 2015 and July 2015. It is undisputed that more than 182 days elapsed between the issuance of an initial dispositional order and the termination of both parents' parental rights in October 2017.

During respondent-mother's plea, she acknowledged that ES tested positive for several drugs at birth, resulting in his temporary removal, and that her parental rights to another child had been previously terminated because of substance abuse. Respondent-mother also entered a no-contest plea to allegations that respondent-father was arrested for selling drugs out of the home, that she was involved and assisted in the sale and transport of drugs, and that ES was present during the sale of drugs. Respondent-mother also admitted that she continued to test positive for drugs at that time.

---

[2] MCL 712A.19b(3)(g) has been substantively amended, effective June 12, 2018. See 2018 PA 58.

Respondent-mother argues that the trial court erred by terminating her parental rights because the only issue remaining for her was substance abuse and she was addressing it. However, respondent-mother continued having positive drug tests and missing drug screens. DHHS filed three show-cause motions because of respondent-mother's continued violations of the court order relating to substance abuse, missed drug screens, and failure to complete substance-abuse therapy. She subsequently revoked her consent for DHHS to receive information about her substance-abuse treatment and testing. For several months, respondent-mother failed to provide proof of a renewed medical-marijuana card but continued to test positive for marijuana. She remained noncompliant with random drug screens. While respondent-mother was required to participate in NA or AA classes, she refused. Dual drug screening began after urine screens revealed positive results in April 2017 and June 2017 that oral swabs could not detect. Foster-care workers characterized respondent-mother's approach to the termination case as "[i]nconsistent," "manipulative," and "deceptive." One foster-care worker testified that she would request information for months and receive nothing until minutes before court hearings. Respondent-mother would only appear to show consistency when a hearing date approached. Given her failure to participate in services and drug screens, there was no reasonable likelihood that she would rectify her issues within a reasonable time. Indeed, respondent-mother had ample time to rectify the conditions that resulted in the court taking jurisdiction; termination did not take place until nearly two and one-half years after removal and more than two years after services were recommended. Because the trial court did not clearly err when it found that DHHS had established MCL 712A.19b(3)(c)(*i*) by clear and convincing evidence, we decline to consider whether DHHS established the remaining ground for termination. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## B. BEST INTERESTS

Respondent-mother next argues that the trial court clearly erred by finding that termination of her parental rights was in ES's best interests because they were bonded and the trial court failed to address the fact that ES was placed with a relative. This Court reviews the trial court's determination of best interests for clear error. *In re Olive/Metts*, 297 Mich App at 40.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

Respondent-mother argues that the trial court's finding regarding the child's best interests was erroneous because of the strong bond between her and ES. "The trial court should weigh all the evidence available to determine the [child's] best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court may consider include the parent's visitation history with the child, the child's wellbeing while in care, and the possibility of

adoption. *In re White*, 303 Mich App at 714. The trial court may also consider how long the child lived with relatives and the likelihood that "the child could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). The court may also consider the parent's substance-abuse problems. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

The trial court recognized that the testimony indicated that there was a good bond between ES and respondent-mother. However, the strength of the bond between the child and the parent is only one factor for the court to consider. See *In re White*, 303 Mich App at 714. The court heard from DHHS that ES needed permanency and finality. As previously noted, respondent-mother was unable to show compliance with her case plan. She was noncompliant in attending AA or NA meetings, continued to test positive for substances for which she did not have a prescription, and continued to miss required drug testing. The record also demonstrates that she failed to maintain a consistent, sufficient income, and DHHS could not verify that she had safe housing because she involved herself with people who would not complete the required screening. This evidence weighs negatively against respondent-mother's ability to parent and support ES's need for permanency and appropriate care. Given respondent-mother's continued failure to comply with the agency's plan and court orders, it was not likely that ES could be returned to her care within the foreseeable future, if at all. *In re Frey*, 297 Mich App at 248-249.

Respondent-mother's ongoing substance-abuse issues support a finding that termination of her parental rights was in ES's best interests. Respondent-mother had a history of relapses and testified that her longest period of sobriety was two years. Substance abuse was an issue in her prior termination. Despite this prior termination, ES tested positive for opiates, benzodiazepines, and methadone at birth. Respondent-mother tested positive for many of the same substances during the pendency of this case. As previously discussed, respondent-mother has not shown an ability to comply with case-service plans or substance-abuse screens. These factors weighed favorably towards a finding that termination was in ES's best interests, despite the bond between respondent-mother and the child. Indeed, respondent-mother's continued failure to comply with services supports a conclusion that ES would remain at risk if returned to her care. On the whole, the record supports a conclusion that termination was in ES's best interests in light of respondent-mother's continued struggles with substance abuse even after a prior termination, and her failure to comply with the case-service plan.

However, respondent-mother further argues that because ES was placed with a relative, the trial court clearly erred when it failed to expressly address his placement at the time of the termination hearing. The Michigan Supreme Court has stated that "a child's placement with relatives weighs against termination . . . ." *In re Mason*, 486 Mich at 164. Therefore, "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43. Indeed, "[a] trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives render[s] the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

The trial court did not expressly address the fact that ES was residing with a maternal relative. The record supports a finding that ES was doing well at his maternal grandmother's house. ES's needs were being met, and he was current on all medical and dental care. The

foster-care worker reported that it would be in ES's best interests "to have permanence and stability and to be adopted by his grandmother." However, the trial court neither mentioned that ES's placement with his grandmother was a factor that weighed against termination nor discussed the standard set forth in *In re Mason*. Because the trial court was required to explicitly address ES's placement with a relative at the time of the termination hearing if applicable, *In re Olive/Metts*, 297 Mich App at 43, the trial court clearly erred by failing to do so. Therefore, we are required to vacate the trial court's best-interests analysis as applied to respondent-mother and remand this case to the trial court for further findings regarding best-interests.

### III. RESPONDENT-FATHER'S ISSUE ON APPEAL

Respondent-father argues that the trial court's findings on the statutory grounds for termination were clearly erroneous and based solely on his incarceration.

The trial court terminated respondent-father's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (g). Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor, *In re Williams*, 286 Mich App at 272, and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*). Termination of parental rights is proper under MCL 712A.19b(3)(g) if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."[3] "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id.* at 711.

ES came within the court's jurisdiction after the court accepted respondent-father's plea of admission in June 2015. Respondent-father admitted that he and respondent-mother were the legal parents of ES; that he had a criminal history stemming from an arrest for selling heroin out of his home; that he was arrested, making him unable to care for ES; and that he had pending felony drug charges. At the time of termination, respondent-father had been charged with 13

---

[3] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. Under the version of the statute in effect at the time of these proceedings, termination was appropriate if "[t]he parent, *without regard to intent*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) (emphasis added). Under the new version of the statute, termination is appropriate if "[t]he parent, *although, in the court's discretion, financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58 (emphasis added).

different counts of manufacturing and delivering narcotics, and later pleaded guilty to three of those charges. Respondent-father received a minimum sentence of 51 months' incarceration, with an earliest possible release date of February 26, 2020.

At the termination hearing, respondent-father confirmed that he obtained custody of ES after the child was born with drugs in his system. When asked, he admitted that he fed respondent-mother's drug problem by giving her drugs while she was pregnant. He also admitted that he knew that providing respondent-mother drugs during her pregnancy was harming ES. Respondent-father was eventually sentenced for drug-related offenses as a result of selling heroin from his home after ES was placed in his custody. DHHS received reports that respondent-father continued his involvement in drug sales even after ES's removal. Moreover, respondent-father was "really uncooperative" in caseworkers' efforts to facilitate telephone calls with the child during his incarceration. A caseworker testified that respondent-father failed to return necessary letters and contracts and had not been participating in any services. In addition, the caseworker confirmed with the prison that he was not eligible for "boot camp" despite his repeated statements that he *was* eligible. The totality of the evidence does not support a finding that respondent-father accomplished any meaningful change in the conditions that led to the court taking jurisdiction over ES. *In re Williams*, 286 Mich App at 272.

Respondent-father argues that the trial court clearly erred because he repeatedly tried to provide proper care and custody of ES through placement of the child during his incarceration with ES's paternal grandmother. "The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich at 160. Indeed, a parent may satisfy his duty to provide proper care and custody by placement with a fit and willing relative. *Id*. at 163-165. Respondent-father began requesting ES's placement with respondent-father's mother at the April 2015 preliminary hearing. DHHS indicated that ES was already appropriately placed with his maternal grandmother and that it did not plan to move him unless it became necessary. The foster-care worker later confirmed that a background check revealed that the paternal grandmother had a "previous drug history" that would exclude her from becoming ES's foster parent "due to the nature of the case."

Respondent-father relies on this Court's holding in *In re Pops*, 315 Mich App 590; 890 NW2d 902 (2016), for the proposition that a criminal record alone may not disqualify a family member from qualifying as proper placement. In *Pops*, the issue being decided was the appropriateness of a foster placement with a relative who had a misdemeanor criminal record for various non-drug offenses. *Id*. at 596-597. In the present case, a foster-care worker stated that the paternal grandmother's drug history would exclude her as a caregiver "due to the nature of the case," which, quite obviously, involved issues regarding drugs. Accordingly, *Pops* is distinguishable, and we decline to disrupt the trial court's ruling based solely on a finding that respondent-father sought appropriate care for ES, given that (1) the person with whom he sought placement had a drug history; (2) jurisdiction over the child was obtained, in part, because of drug issues; (3) respondent-father did not seek the placement in question until after the initiation of the child-protective proceedings; and (4) he had not resolved the issues leading to adjudication and, as discussed below, was not likely to do so within a reasonable time.

Respondent-father also argues that he would have consented to placement with ES's maternal grandmother. A parent may provide proper care and custody by consenting to the

child's placement with a relative who provides adequate care. *In re Sanders*, 495 Mich 394, 420-421; 852 NW2d 524 (2014). Respondent-father's argument is unsupported by the record. As respondent-father has argued, he repeatedly asked for ES's placement to be changed during the pendency of this case. At no time did respondent-father express his consent to ES's placement with his maternal grandmother. In fact, the record suggests that respondent-father's telephone contact with ES was assigned DHHS supervision because ES's foster parent perceived threats from respondent-father. On this record, respondent-father did not provide proper care and custody by consenting to ES's placement with a relative.

At any rate, whether ES's placement with a relative was made by request or by consent *does not change* respondent-father's failure to comply with his case plan following his incarceration. Foster-care workers found that respondent-father was resistant to the programs made available to him, and he was "really uncooperative" in efforts to facilitate telephone calls with ES. He failed to respond to letters, provide signed consent forms allowing workers to discuss available services, or follow the updated case plan. At the time of the termination hearing, respondent-father had not completed any services since his incarceration. He continued to describe his actions as "mistakes," but did not put significant effort into compliance with DHHS's requests.

As a whole, given respondent-father's history of knowingly endangering ES by exposure to drugs and his failure to cooperate with DHHS, there was no reasonable likelihood that he would rectify his issues within a reasonable time. The trial court did not clearly err by finding that termination of respondent-father's' parental rights was proper under MCL 712A.19b(3)(c)(*i*) and (g). We note that respondent-father does not raise a best-interests issue on appeal but makes his request for appellate relief based solely on the statutory grounds.

In Docket No. 342062, we affirm. In Docket No. 341113, we affirm the finding of a statutory ground for termination but remand for further findings regarding best interests. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly